UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
JORDAN L. MOORE, :
              Plaintiff, :
 :
v. : **OPINION AND ORDER**
 :
WESTCHESTER COUNTY, SGT. BONDS : 18 CV 11472 (VB)
#139, R.N. BISHOP, C.O. LEE, and C.C.S., :
Individually and Officially, :
              Defendants. :
--------------------------------------------------------------x

Briccetti, J.:

      Plaintiff Jordan L. Moore, proceeding pro se and in forma pauperis, brings this Section 1983 action against defendants Westchester County, Sgt. Bonds #139, and C.O. Lee (together, the "County Defendants"); and R.N. Bishop and Correct Care Solutions/Wellpath (sued herein as C.C.S.) (together, the "CCS Defendants"), individually and officially.[1] Plaintiff alleges violations of his Fourth, Eighth, and Fourteenth Amendment rights.

      Now pending are separate motions of the County Defendants and the CCS Defendants to dismiss the second amended complaint ("SAC") pursuant to Rule 12(b)(6). (Docs. ##48, 51).

      For the following reasons, the motions are GRANTED.

      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

---

[1] Pursuant to the Court's July 11, 2019, Order, defendant "Emergency Response Team ("ERT") Unit of Westchester County Jail Correctional Officers" was terminated from this action. (Doc. #47). Although the caption of the second amended complaint purports to name the ERT Unit of Westchester County Jail as a defendant in the caption, it too is not a defendant in this action because plaintiff does not identify them as such in the "defendant information" section of his complaint. (Doc. #46 ("SAC") at ECF 3). "SAC at ECF __" refers to the page numbers automatically assigned by the Court's Electronic Case Filing system, which will be used herein.

**BACKGROUND**

For the purpose of ruling on the motions to dismiss, the Court accepts as true all well-pleaded factual allegations in the SAC and draws all reasonable inferences in plaintiff's favor, as summarized below.

I.   Alleged Misconduct

Plaintiff alleges on November 28, 2018, at approximately 11:00 p.m., he told C.O. Lee that his cell in the Special Housing Unit ("SHU") was flooded from water leaking from a backed-up toilet and shower, he was cold, he did not have a blanket or bedroll, and his mattress was ripped and dirty. Plaintiff further alleges C.O. Lee said he would tell Sgt. Bonds. Plaintiff says that when Sgt. Bonds arrived, plaintiff asked Sgt. Bonds to have the water cleaned up and the mattress replaced, and Sgt. Bonds responded she would notify the captain about his complaints.

Plaintiff claims he then told C.O. Lee he had chest pains, and that C.O. Lee called R.N. Bishop to evaluate plaintiff. Plaintiff says he explained to R.N. Bishop he slipped in his cell twice due to the water and his cell was hazardous. According to plaintiff, R.N. Bishop responded, "Oh, you shouldn't be acting up [and] I have nothing to do with that [and] you'll be alright." (SAC at ECF 6). Plaintiff says he also told R.N. Bishop his cell was freezing cold and he did not have a mattress or bedroll to sleep on. In response, R.N. Bishop allegedly said, "Come on[,] let's go[,] I don't got time for this [and] I have better things to do." (Id.).

Plaintiff alleges R.N. Bishop then became "aggravated" and told plaintiff to put his arm through the tray-slot so she could take plaintiff's blood pressure, but that his arm did not fit through the tray slot. (SAC at ECF 6). According to plaintiff, R.N. Bishop told Sgt. Bonds to open the bigger tray slot but Sgt. Bonds refused and said, "No, he's done [and] we can't open his

2

big tray-slot anyway," and told R.N. Bishop to leave. (Id.). Plaintiff alleges he then said, "I am not refusing medical attention," and called for help because of sharp chest pains and shortness of breath. (Id.).

According to plaintiff, no one responded. Plaintiff alleges he then slipped on the wet floor a third time and hit his head and back, after which he again called for help. Plaintiff further alleges C.O. Lee came over, told plaintiff he told Sgt. Bonds of plaintiff's call for help, and that help was on the way. Plaintiff claims he told C.O. Lee he had no feeling in his lower extremities and had sharp pains shooting through his lower back. Plaintiff further claims that approximately half an hour later, C.O. Lee said he would call a "code signal #3" because no one had yet shown up. (SAC at ECF 7). Plaintiff alleges R.N. Bishop, Dianna Jordan, and R.N. Jane Doe then appeared with Sgt. Bonds and several ERT members.

According to the SAC, Sgt. Bonds "looked down at [plaintiff] [and] started smiling at [plaintiff] with a sinister look in her eyes." (SAC at ECF 7). Plaintiff claims the ERT members placed him in leg and wrist restraints, which put pressure on his back and caused him to scream in "agony." (Id.). Plaintiff alleges R.N. Jane Doe then came in and attempted to take plaintiff's blood pressure but was unsuccessful because plaintiff was shaking from the cold. According to plaintiff, R.N. Jane Doe said she could not take plaintiff's blood pressure, then "did something to his foot" and left. (Id.).

Plaintiff claims that at this point, ERT helmet numbers 20, 21, and 26 were yelling at him that he could walk and that he should get up, were twisting his wrist, and were deliberately dragging him through the water. Plaintiff says he told the ERT members he had no bed or bed roll and that it was cold, but the ERT members screamed at him, bent his wrist, dragged him across the wet concrete floor, and dropped him on the floor.

3

Plaintiff says that ERT helmet numbers 20, 21, and 26 tried to get him to walk to a different cell.  Plaintiff alleges he told them his lower back had shooting pains and he could not walk.  Plaintiff further alleges he told them to "stop using excessive force."  (SAC at ECF 7).  Plaintiff claims ERT helmet number 26 threatened to put him back in the flooded cell and without blankets or bed.  Plaintiff says he "pleaded with helmet #26 [and] Sgt. Bonds to remove [him] from the hazardous cell."  (Id. at ECF 8).  Plaintiff alleges someone then took him by wheelchair to a different cell, and threw him on the bed.  Plaintiff claims that as a result of this incident, he was injured so badly that he could not sleep and tried to commit suicide.

Plaintiff makes several other allegations apart from the November 28 incident.  Plaintiff claims ERT members would enter his SHU cell and "put their hands on [him] while on camera." (SAC at ECF 5).  In addition, plaintiff alleges the jail withheld his mail, legal work, grievance forms, and bible, and kept him from corresponding with anyone outside of the jail.  Furthermore, he states the jail barred him from showering, and on two instances, barred him from brushing his teeth.

## II.   Procedural History

Plaintiff filed his original complaint on December 6, 2018.  (Doc. #2).  Thereafter, in response to the Court's Valentin order (Doc. #6), the Westchester County Attorney's Office identified the three ERT members plaintiff referenced in his complaint.  Accordingly, the Court ordered the plaintiff to file a single amended complaint naming the newly identified defendants. (Doc. #32).  However, plaintiff's amended complaint named wholly new defendants rather than the defendants named in the original complaint or the ERT members identified by the County Attorney, and alleged facts and events that were entirely different from those alleged in the original complaint.  (See Doc. #37).  On April 24, 2019, the Court struck the amended complaint,

ordered plaintiff to file a second amended complaint, and again directed plaintiff to name only those defendants against whom he wished to bring claims based on the incidents described in the original complaint. (Doc. #38). On July 9, 2019, plaintiff filed the SAC and named as a defendant the "ERT Unit of Westchester Jail Correctional Officers," but did not name as defendants any of the three ERT members the County Attorney had previously identified by name. (Doc. #46). Because plaintiff had repeatedly failed to comply with the Court's instructions to name the ERT members, the Court inferred that plaintiff did not intend to sue them, and instructed the Clerk to terminate defendant "ERT Unit of Westchester County Jail Correctional Officers." (Doc. #47).

Defendants moved to dismiss on August 1, 2019. After plaintiff failed to file an opposition, the Court sua sponte extended his time to do so. (Doc. #53). Plaintiff again failed to file any opposition, and the Court eventually deemed the motions fully submitted and unopposed. (Doc. #54).

## DISCUSSION

I. Legal Standard

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).[2] First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

The Court must liberally construe submissions of pro se litigants and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam). Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights violations. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). Nor may the Court "invent factual allegations" a plaintiff has not pleaded. Id.

II. Unnumbered Paragraphs

The County Defendants argue the SAC should be dismissed because plaintiff did not number the paragraphs concerning his allegations in the SAC as required by Rule 10(b).

The County Defendants cite no case law for dismissal on this ground. Indeed, they also fail to cite Phillips v. Girdich, 408 F.3d 124 (2d Cir. 2005), a Second Circuit case that is directly on point and stands for the contrary proposition: "[W]here the absence of numbering or succinct

paragraphs [in a pro se case] does not interfere with one's ability to understand the claims or otherwise prejudice the adverse party, the pleading should be accepted. And even where a violation of Rule 10(b) is not harmless, dismissal is not typically the appropriate course of action." Id. at 128.[3]

Accordingly, the Court will not dismiss the SAC on the basis that plaintiff did not number his paragraphs.

III.     Exhaustion of Administrative Remedies

The County Defendants and the CCS Defendants argue the SAC should be dismissed because plaintiff does not allege he exhausted his administrative remedies.

The Court disagrees.

Under the Prison Litigation Reform Act, "[n]o action shall be brought with respect to prison conditions under [Section 1983], or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

"Failure to exhaust administrative remedies is an affirmative defense under the PLRA, not a pleading requirement." Williams v. Correction Officer Priatno, 829 F.3d 118, 122 (2d Cir. 2016). "Accordingly, inmates are not required to specially plead or demonstrate exhaustion in their complaints." Id. "However, a district court still may dismiss a complaint for failure to

---

[3] The attorneys in the County Attorney's office, who are experienced in handling prisoner pro se cases, are advised the Court neither appreciates nor will further tolerate having its time wasted in this fashion.

exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement." Id.

A prisoner's duty to exhaust can be excused only when the administrative remedy is unavailable, or put differently, "officially on the books [but] . . . not capable of use to obtain relief." Ross v. Blake, 136 S. Ct. 1850, 1859 (2016). The administrative remedy is unavailable when the remedy (i) "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (ii) is "so opaque that it becomes, practically speaking, incapable of use . . . [or] no ordinary prisoner can discern or navigate it"; or (iii) allows "prison administrators [to] thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Williams v. Correction Officer Priatno, 829 F.3d at 123–24 (quoting Ross v. Blake, 136 S. Ct. at 1859–60).

Here, although a close call, plaintiff plausibly alleges the grievance process was unavailable to him because he states he "was denied . . . grievance forms." (SAC at ECF 8).

Accordingly, the Court will not dismiss plaintiff's claims for failing to exhaust his administrative remedies.

IV.     Deliberate Indifference Claims

A "pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight[h] Amendment." Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017).

Here, plaintiff alleges he was a pre-trial detainee at the time of the alleged incidents. (SAC at ECF 2). Accordingly, the Court analyzes plaintiff's deliberate indifference claims under the Fourteenth Amendment.

To state a deliberate indifference claim, plaintiff's allegations must satisfy two prongs: an objective prong and a <u>mens rea</u> prong.  Namely, plaintiff must plausibly allege "that the challenged conditions were sufficiently serious," and defendants "acted with at least deliberate indifference to the challenged conditions."  <u>Darnell v. Pineiro</u>, 849 F.3d at 29.

To plead the objective prong, a pretrial detainee must plausibly allege the challenged conditions, "either alone or in combination, pose[d] an unreasonable risk of serious damage to his health."  <u>Darnell v. Pineiro</u>, 849 F.3d at 30.  "There is no static test to determine whether a deprivation is sufficiently serious; instead, the conditions themselves must be evaluated in light of contemporary standards of decency."  <u>Id</u>. at 29.

To plead the <u>mens rea</u> prong, a pretrial detainee must plausibly allege "that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known," of the risk.  <u>Darnell v. Pineiro</u>, 849 F.3d at 35.  The Fourteenth Amendment's <u>mens rea</u> prong "is defined objectively" and "can be violated when an official does not have subjective awareness that the official's acts (or omissions) have subjected the pretrial detainee to a substantial risk of harm."  <u>Id</u>.

A. <u>Serious Medical Needs</u>

Defendants argue plaintiff's deliberate indifference to serious medical needs claim fails because plaintiff has not sufficiently alleged the objective prong of the deliberate indifference analysis.

The Court agrees.

In the context of medical care, two inquiries determine whether a deprivation is objectively serious.  "The first inquiry is whether the prisoner was actually deprived of adequate

9

medical care." Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006).  Because prison officials' "duty is only to provide reasonable care," prison officials are liable only if they fail "'to take reasonable measures' in response to a medical condition."  Id. at 279–80 (quoting Farmer v. Brennan, 511 U.S. 825, 847 (1994)).

The second inquiry is "whether the inadequacy in medical care is sufficiently serious." Salahuddin v. Goord, 467 F.3d at 280.  This question "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner."  Id. (citing Helling v. McKinney, 509 U.S. 25, 32–33 (1993)).  If the allegedly offending conduct "is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious."  Id. Relevant factors in determining "the seriousness of the medical condition include whether 'a reasonable doctor or patient would find [it] important and worthy of comment,' whether the condition 'significantly affects an individual's daily activities,' and whether it causes 'chronic and substantial pain.'"  Id. (quoting Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)).

Here, plaintiff alleges two injuries: (i) chest pains and shortness of breath, and (ii) no feeling in his lower extremities and sharp shooting pains in his lower back.

       1.     C.O. Lee

Plaintiff alleges that when he told C.O. Lee about his chest pains, C.O. Lee called R.N. Bishop to examine plaintiff.  According to the SAC, when plaintiff told C.O. Lee he had no feeling in his lower extremities and sharp pains in his back, C.O. Lee again called for assistance, going so far as to call a "code signal #3" when assistance did not arrive quickly.  Because C.O. Lee took these "reasonable measures in response" to plaintiff's alleged medical conditions, C.O. Lee did not "actually deprive[] [plaintiff] of adequate medical care."  Salahuddin v. Goord, 467

F.3d 263 at 279–80.  Thus, plaintiff's allegations are insufficient to plead the objective prong as against C.O. Lee.

### 2. Sgt. Bonds

As to the first injury, plaintiff plausibly alleges Sgt. Bonds "actually deprived [him] of adequate medical care," Salahuddin v. Goord, 467 F.3d at 279, because she told R.N. Bishop to leave without taking plaintiff's blood pressure.  But although plaintiff plausibly alleges Sgt. Bonds "fail[ed] to provide any treatment," id., plaintiff does not allege any facts to show that the condition was sufficiently serious.  He does not, for instance, allege his chest pains and shortness of breath were chronic (or even that they lasted beyond the few hours of the incidents described on November 28, 2018), caused him substantial pain, or impacted his daily activities.  As to the second injury, plaintiff does not allege Sgt. Bond deprived of him adequate medical care.  Accordingly, as to Sgt. Bonds, plaintiff's allegations are insufficient to plead the objective prong.

### 3. R.N. Bishop

As with Sgt. Bonds, plaintiff claims R.N. Bishop deprived him of adequate medical care because she did not take his blood pressure.  However, as explained above, plaintiff does not allege any facts to show his condition of chest pains and shortness of breath was sufficiently serious.  And like with Sgt. Bonds, plaintiff does not allege R.N. Bishop deprived him of adequate medical care with respect to his lower back and lower extremities injuries.  Thus, plaintiff's allegations are also insufficient to plead the objective prong with respect to R.N. Bishop.

### 4. Westchester County and CCS

To the extent plaintiff brings a claim against Westchester County and CCS for deliberate indifference to serious medical needs, this claim fails because Section 1983 liability cannot be

11

predicated on a theory of respondeat superior.  See City of Canton v. Harris, 489 U.S. 378, 385 (1989).

Accordingly, plaintiff's deliberate indifference to serious medical needs claim must be dismissed.

  B. Conditions of Confinement

The County Defendants argue plaintiff fails to state a claim respecting the conditions of his confinement.

The Court agrees.

Although "the Constitution does not mandate comfortable prisons, prisoners are entitled to basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety." Randle v. Alexander, 960 F. Supp. 2d 457, 474–75 (S.D.N.Y. 2013).

Here, assuming the SAC adequately alleges the conditions of the first cell plaintiff was in posed an unreasonable risk of serious damage to his health, plaintiff fails to allege that any official deliberately disregarded that risk.  Indeed, his allegations show the opposite.  According to plaintiff, when he complained to C.O. Lee about the conditions in his cell, C.O. Lee told Sgt. Bonds, who then told a captain.  Plaintiff alleges he was removed from this cell later the same evening.

Plaintiff also makes a number of other allegations about his confinement.  Plaintiff claims the ERT was deliberately paged while he was in the SHU and that ERT members would go into his cell and "put their hands on [him] while on camera."  He also alleges the Westchester County Jail withheld his mail, legal work, grievance forms, and bible; kept him from corresponding with anyone outside of the jail; did not allow him to shower; and at least twice did not allow him to brush his teeth for more than 48 hours.  To the extent plaintiff intended any of these allegations

to support a conditions of confinement claim, these allegations are entirely conclusory and do not state a legally cognizable claim. Ashcroft v. Iqbal, 556 U.S. at 678.

Moreover, to the extent plaintiff brings a Section 1983 claim against Westchester County and CCS for deliberate indifference to his conditions of confinement, this claim fails because Section 1983 liability cannot be predicated on a theory of respondeat superior. See City of Canton v. Harris, 489 U.S. at 385.

Accordingly, plaintiff's conditions of confinement claim must be dismissed.

V.      Excessive Force Claim

The County Defendants argue plaintiff has not stated an excessive force claim against them or the ERT.

The Court agrees.

A pretrial detainee bringing a Fourteenth Amendment excessive force claim must show the defendant acted deliberately and "that the force purposely or knowingly used against him was objectively unreasonable." Kingsley v. Hendrickson, 135 S. Ct. 2466, 2472–73 (2015).

Here, plaintiff alleges that three unnamed ERT members used excessive force against him as they moved him between cells.

However, the unnamed ERT members are not defendants in this case, and therefore, there can be no claim against them. As explained above, plaintiff was instructed several times to add the ERT members identified by the County Attorney to the complaint and failed to do so. Accordingly, by Order dated July 11, 2019, the Court inferred plaintiff did not intend to sue them and directed the clerk to terminate "ERT Unit of Westchester Jail Correctional Officers" from this action. (Doc #47).

Moreover, plaintiff does not allege that C.O. Lee, Sgt. Bonds, or R.N. Bishop were personally involved in the use of force against him while he was being moved between cells. Accordingly, plaintiff fails plausibly to allege an excessive force claim against any of those three named defendants. See Ashcroft v. Iqbal, 556 U.S. at 676 (plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). Similarly, to the extent plaintiff intends to bring the excessive force claim against Westchester County or CCS, that claim fails because Section 1983 liability cannot be predicated on a theory of respondeat superior. See City of Canton v. Harris, 489 U.S. at 385.

Accordingly, plaintiff's excessive force claim must be dismissed.

VI. Fourth Amendment Claim

Plaintiff claims his Fourth Amendment rights were violated. However, the Court discerns no plausible factual basis for a Fourth Amendment claim. Accordingly, plaintiff's Fourth Amendment claim must be dismissed.

VII. Monell Claims

As plaintiff has not adequately pleaded an underlying violation of his constitutional rights, his Monell claims against Westchester County and CCS are dismissed. See Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006) (district court "was entirely correct" in declining to address Monell claim after finding no underlying constitutional violation).

VIII. Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure instructs that courts "should freely give leave" to amend a complaint "when justice so requires." Liberal application of Rule 15(a) is warranted with respect to pro se litigants, who "should be afforded every reasonable opportunity to demonstrate that [they have] a valid claim." Matima v. Celli, 228 F.3d 68, 81 (2d

14

Cir. 2000). District courts "should not dismiss [a pro se complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000). But "a futile request to replead should be denied." Id.

Here, the Court has already twice granted plaintiff leave to amend his original complaint, to add as named defendants the three ERT members. Twice, plaintiff failed to add them. Moreover, the Court does not find any allegations in the SAC, liberally construed, that suggest plaintiff has a valid claim he has merely "inadequately or inartfully pleaded" and therefore should be "given a chance to reframe." Cuoco v. Moritsugu, 222 F.3d at 112. On the contrary, the Court finds that repleading would be futile, because the problems with the SAC are substantive, and supplementary and/or improved pleading will not cure its deficiencies. Id. Accordingly, the Court concludes it would be futile to allow plaintiff another opportunity to amend his complaint.

## CONCLUSION

The motions to dismiss are GRANTED.

The Clerk is instructed to terminate the motions (Docs. ##48, 51) and close the case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

Dated: March 30, 2020
      White Plains, NY

                            SO ORDERED:

                            _____
                            Vincent L. Briccetti
                            United States District Judge